UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD RIEVER,

       Plaintiff,

                                                         Case Number 08-15033-BC
v.                                                    Honorable Thomas L. Ludington

SAIA MOTOR FREIGHT LINE, INC.,

       Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT, DISMISSING PLAINTIFF'S BREACH OF EMPLOYMENT POLICIES AND PROCEDURES CLAIM WITH PREJUDICE, AND DENYING AS MOOT DEFENDANT'S MOTION TO STAY DISCOVERY**

       Plaintiff Ronald Riever filed a complaint on October 30, 2008, alleging three causes of action against his former employer, Defendant Saia Motor Freight Line, Inc., including (1) age discrimination under the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq.; (2) retaliation under the Michigan ELCRA; and (3) breach of employment policies and procedures under Michigan common law. Defendant removed the case, based on diversity jurisdiction, to this Court on December 5, 2008.

       Now before the Court is Defendant's motion to dismiss [Dkt. # 8], filed on January 16, 2009, in which Defendant seeks dismissal of Plaintiff's counts 1 and 3 under Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a response [Dkt. # 12] on February 5, 2009, and Defendant filed a reply [Dkt. # 13] on February 13, 2009. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes

that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

Also before the Court is Defendant's motion to stay discovery [Dkt. # 14] filed on March 5, 2009. Defendant seeks to stay discovery pending resolution of its motion to dismiss. As the Court is now resolving Defendant's motion to dismiss, the Court will deny as moot Defendant's motion to stay discovery.

I

The following facts are taken from Plaintiff's complaint:

Beginning on October 4, 1999, Plaintiff worked as a terminal manager at a facility located in Saginaw County. As a terminal manager, Plaintiff became employed by Defendant when it purchased his employer, at an unidentified point in time. Ultimately, Defendant terminated Plaintiff's employment on March 28, 2008. At that time, Plaintiff was fifty-one years old.

With respect to his age discrimination cause of action, Plaintiff alleges that after Defendant "inherited" him from his former employer, Defendant conducted a "campaign of harassment" against Plaintiff, which consisted of unwarranted threats to terminate his employment, until Defendant terminated his employment. Plaintiff alleges that Defendant's reason for terminating his employment, insubordination, was pretextual and that Defendant was motivated by age. Plaintiff alleges that Defendant systematically discriminated against employees based on age by targeting and discharging older terminal employees and replacing them with younger, less qualified employees.

With respect to his retaliation cause of action, Plaintiff alleges that one of Defendant's former employees, Melvin Conner, brought a baseless discrimination claim against Defendant. On March 21, 2008, Plaintiff alleges that he was interviewed by Defendant's lawyer concerning that

employee's claims. Plaintiff alleges that Defendant terminated his employment because of this protected activity.

With respect to his breach of employment policies and procedures cause of action, Plaintiff alleges that Defendant's policies required it to treat Plaintiff in a fair, courteous, and respectful manner. Plaintiff also alleges that Defendant has represented that its discipline of Plaintiff was authorized by, and taken pursuant to, its disciplinary policy. Plaintiff alleges that he was not treated in a fair, courteous, and respectful manner, and that he was not insubordinate as Defendant claims. Plaintiff alleges that he relied on Defendant's policies. Plaintiff attached several pages of Defendant's employee manual to his complaint, including portions of sections entitled, "open door policy," "company statement regarding unions," "harassment," "sexual harassment," "professional work conduct and discipline," and "job opportunity - transfer policy." *See* Compl. Ex 1, 2.

The only two sections of the employee manual that Plaintiff refers to in his complaint are the "open door policy" and the "professional work conduct and discipline" sections. The section entitled, "open door policy," provides, in full:

> Our goal at Saia is to provide the best service available to our customers. To provide this type of service requires a positive attitude and a team effort on the part of all employees. We will promote an atmosphere of concern within our company, which fosters this caring attitude. If you have any questions, suggestions, or problems with your job, you are encouraged to discuss the matter with your immediate supervisor, terminal manager, or department head.
>
> All supervisory and management personal are charged with the responsibility of listening and giving you a responsible reply. Quite simply, if there is a problem brought to our attention we will do our best to take corrective action. If we disagree, we will discuss the matter. There will be no retaliation on any matters brought to management whether we agree or disagree.
>
> Furthermore, if an employee feels that he or she has not been listened to or has not received a responsible reply, then that employee is encouraged to contact the next level of Management or the Human Resources Department. No employee will be retaliated against for doing so. In all cases the employee will be heard and will receive a responsible reply.

Compl. Ex. 1.

The section entitled, "professional work conduct and discipline," provides, inter alia, a list of actions and failures to act on the part of the employee that can lead to discipline and termination of employment. The section also provides "general guidelines" to "corrective action steps" that the employer "may" take to address an employee's conduct. The section further provides:

> In addressing performance issues, flexibility and individual judgment are often required. Corrective or disciplinary steps need not be taken in a particular order nor do any progressive steps need to occur prior to termination.

Compl. Ex. 2. Finally, the section states, "In some situations, the company, in its sole judgment, may decide that these general guidelines are inappropriate and proceed directly to termination." *Id.*

Additionally, Defendant attached the cover and first page of the employee manual to its motion to dismiss. The first page contains an "important disclaimer," which provides in full:

> I understand and agree that neither this Employee Manual nor any other written or oral statements by the Company or its representatives are a contract of employment, either by intent or implication. I understand and agree that no supervisor, manager, or other representative of the Company, other than the President, and then only if in writing signed by him, has any authority to enter into any agreement with me for employment for any specified period of time, or to make any agreement with me contrary to the terms of this Certification, and no agreement has been made. Accordingly, employment with the Company is terminable at the will of either me or the Company at any time, without notice or any specific disciplinary procedures.

Dft's Mtn to Dismiss Ex. 2.

II

In considering a motion to dismiss brought under Rule 12(b)(6), "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Yet, to survive a Rule 12(b)(6) motion, a plaintiff's complaint "must contain either direct or inferential allegations respecting all the material

elements [of the claim] to sustain a recovery under some viable legal theory." *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 444 (6th Cir. 2007) (internal quotation omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). *See also*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (explaining that a complaint must contain something more than a statement of facts that merely creates speculation or suspicion of a legally cognizable cause of action). "When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

III

Defendant contends that counts 1 and 3 of Plaintiff's complaint should be dismissed under Rule 12(b)(6). Defendant contends that count 1 should be dismissed because Plaintiff has not plead the facts necessary to support his claim of age discrimination and merely makes conclusory statements regarding a prima facie case of age discrimination under the ELCRA. Defendant contends that count 3 should be dismissed because Michigan law does not provide a cause of action for breach of an employment policy or procedure when the employee manual specifically disclaims the formation of an employment contract based on the policies contained therein.

A

First, with respect to count 1, Plaintiff's age discrimination claim under the ELCRA, Plaintiff has not plead facts that would entitle him to relief. With the exception of identifying himself and

his employer, his dates of employment, his age when his employment was terminated, the allegation that Defendant conducted a "campaign of harassment," and the allegation that Defendant claims it terminated Plaintiff's employment based on his insubordination, Plaintiff has not alleged any factual support for his claim. Rather, the majority of Plaintiff's statements in the complaint are conclusory statements stating the prima facie elements of his age discrimination claim without factual support.

Plaintiff contends that he has alleged the following facts in support of his age discrimination claim:

- Plaintiff was employed by Defendant as a terminal manager at its facility located in Saginaw County.

- Plaintiff was hired on October 4, 1999, as a terminal manager and continuously held that position until his wrongful termination which occurred on March 28, 2008.

- Defendant inherited Plaintiff when it purchased Plaintiff's former employer and Defendant conduct a campaign of harassing the Plaintiff along with unwarranted threats of termination up to the date of Plaintiff's wrongful termination.

- Plaintiff was fifty-one years old at the time of discharge.

- Plaintiff was terminated for reasons that were wholly pretextual in nature and in breach of its policies and procedures.

- Defendant was motivated by Plaintiff's age when the decision was made to terminate his employment.

- Defendant has systematically targeted and discharged older terminal managers for pretextual reasons and replacing those individuals with younger, less qualified individuals.

- Plaintiff was replaced by a younger, less qualified person.

As Defendant's motion and reply emphasize, Plaintiff has not alleged any facts showing that he was singled out because of his age, Plaintiff makes no specific reference to age-based conduct or comments, and Plaintiff does not identify even one younger individual who was treated more favorably by Defendant. Based on the above, the Court will grant Defendant's motion to dismiss

Plaintiff's age discrimination claim under the ELCRA. However, rather than dismiss Plaintiff's claim outright, the Court will grant Plaintiff leave to file an amended complaint that meets the requirements set forth in *Twombly*. Should Plaintiff fail to do so, the Court will dismiss Plaintiff's claim with prejudice.

B

Second, Defendant contends that Plaintiff's count III, breach of employment policies and procedures, should be dismissed because Michigan law does not support such a cause of action where the plaintiff is an at-will employee and the employer specifically states in its employee manual that the policies set forth therein do not create an employment contract. Defendant also contends that any amendment of this claim would be futile. In response, Plaintiff contends that, regardless of whether his employment is at will or for cause, he can maintain a cause of action for breach of an employment policy because Defendant has created an enforceable right because of representations made in its employee manual. Plaintiff indicates that he does not concede that his employment was not for cause, but he does not argue that point in his response to Defendant's motion to dismiss.

Under Michigan law, there is a presumption that employment relationships are terminable at will. *Sahadi v. Per-Se Techs., Inc.*, 280 F. Supp. 2d 689, 701 (E.D. Mich. 2003) (citing *Lynas v. Maxwell Farms*, 273 N.W. 315 (Mich. 1937)). Contractual obligations or limitations are only imposed on an employer's right to terminate employment when that presumption is rebutted. *Id.* (citing *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880 (Mich. 1980)). The presumption may be overcome "with proof of either a contract provision for a definite term of

employment, or one that forbids discharge absent just cause." *Id.* (citing *Rood v. Gen. Dynamics Corp.*, 507 N.W.2d 591 (Mich. 1993)).

A contract provision may be implied "where an employer's policies and procedures instill a 'legitimate expectation' of job security in the employee." *Lytle v. Malady*, 579 N.W.2d 906, 911 (Mich. 1998) (citing *Toussaint*, 292 N.W.2d at 885).[1] Michigan courts "have recognized a two-step inquiry to evaluate legitimate-expectations claims." *Id.* First, it must be determined "what, if anything, the employer has promised." *Id.* (internal quotation omitted). Second, it must be determined "whether that promise is reasonably capable of instilling a legitimate expectation of just-cause employment." *Id.* (internal quotation omitted).

Defendant contends that an employee does not have a legitimate expectation of just-cause employment based on an employee handbook when the handbook states that it does not create a contract or change the at-will employment relationship, citing *Sahadi*, 280 F. Supp. 2d at 701, and *Cluley v. Lansing Bd. of Water and Light*, No. 264208, 2006 WL 551351 (Mich. Ct. App. Mar. 7, 2006). In *Cluley*, the plaintiff asserted that he had a reasonable expectation of just cause employment in part because his employer had an anti-discrimination policy. 2006 WL 551351, at *8. The court of appeals rejected this evidence, stating that "the policy is not reasonably capable of being interpreted as a promise of just-cause employment." *Id.* Rather, the court determined that the employer retained an at-will employment relationship when it included a notice at the front of

---

[1] Courts have recognized two other ways by which a plaintiff can prove a contractual terms, including through (1) "proof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause," and (2) "an express agreement, either written or oral, regarding job security that is clear and unequivocal." *Lytle*, 579 N.W.2d at 911 (internal citations omitted). These two ways of proving a contractual term are not at issue in this case.

its employee manual advising all employees that the policies contained in the manual did not create a contract of employment. *Id.* at *7.[2]

In response, Plaintiff emphasizes that "at-will" and "just-cause" employment are at opposite ends of a spectrum and are not the only types of employment relationships possible under Michigan law, citing *Thomas v. John Deere Corp.*, 517 N.W.2d 265 (Mich. Ct. App. 1994). In *Thomas*, the court explained:

> In some employment contracts, employers choose to retain unfettered discretion to terminate an employee's employment when doing so would not violate the law. In other employment contracts, employers agree to limit their discretion to terminate an employee's employment in some way. Employers and employees are free to bind themselves as they wish, and "at-will" and "just-cause" termination provisions are merely extremes that lie on opposite ends of the continuum of possibilities.

*Id.* at 267. Additionally, Plaintiff contends that in the case *In re Certified Question*, 443 N.W.2d 112 (Mich. 1989), the Michigan Supreme Court "clearly envisioned that employers may be bound by policies beyond those dealing with 'discharge-for-cause' employment policies." Plaintiff emphasizes that the court stated that "an employer who chooses to establish desirable personnel

---

[2] The notice included in the employee manual stated:

> This manual neither implies nor establishes a contract between Lansing Board of Water and Light ("BWL") and the employee. The contents of this Employee Policies and Benefits Reference Handbook summarize current BWL policies, procedures and programs and are intended as guidelines only. Actual policies, procedures and programs can be obtained from Human Resources or viewed on the BWL Intranet Website in the Human Resources section.
>
> The BWL retains the right to change, modify, suspend, interpret or cancel in whole or in part any of the published or unpublished personnel policies or practices of the BWL, without advance notice, in its sole discretion, without having to give cause or justification to any employee. Recognition of these rights and prerogatives is a term and condition of employment and continued employment. As such, the contents of this handbook do not constitute the terms of an employment contract and the BWL is not required to employ you for any set period of time. Any written or oral statement to the contrary by a Supervisor, Manager, Director or other agent of the BWL is unauthorized and should not be relied upon by any prospective or existing employee.

*Id.*

policies, *such as* a discharge-for-cause employment policy," *id* at 454 (emphasis added), benefits from such policies and creates a situation "instinct with obligation." *Id.* (quoting *Toussaint*, 292 N.W.2d at 892). The court also stated that it is not true that "anything less than a permanent job commitment is without meaning or value." *Id.* at 455.

As an example of such a policy, Plaintiff points out that in *Damrow v. Thumb Cooperative Terminal, Inc.*, 337 N.W.2d 338, 340 (Mich Ct. App. 1983), the court found that the employer was bound to follow its policy of not discharging an employee without a "final warning." The employee manual contained a provision that stated, "No employee will be discharged without prior *final warning*, except for cases involving dishonesty, gross insubordination and other such serious offenses as defined in the Terminal work rules section of this manual." *Id.* (emphasis in original) The court found that "the evidence established conclusively that the manual set out the company's obligations vis-a-vis its employees and that it was defendant's intention to follow the manual procedures." *Id.* at 342. There was no apparent disclaimer included in the manual. Based on these cases, Plaintiff contends that Defendant has created, through its policies, what can be described as an "enhanced" employment relationship, which binds Defendant to follow certain policies that it announced in its manual.

In addition to *Thomas* and *In re Certified Question*, Plaintiff relies on *Daimlerchrysler v. Carson*, No. 237315, 2003 WL 888043 (Mich. Ct. App. Mar. 6, 2003), *Sobek v. St. Mary's Medical Center*, No. 00-34048-NZ-1 (Mich. Cir. Ct. May 28, 2003), and *Hock v. St. Mary's Medical Center*, No. 00-34053-NZ-3 (Mich. Cir. Ct. May 7, 2003). In *Carson*, the court upheld the arbitrator's determination that the employer had limited its ability to discharge the plaintiff without first conducting "a fair and thorough investigation" when the employer had stated at a meeting that it

-10-

would conduct such an investigation in response to complaints about employees. 2003 WL 888043, at *1-2. The court found that, under a legitimate-expectations theory, reasonable minds could differ as to whether there was a promise. *Id.* at *3. The court also found that reasonable minds could differ as to whether the promise was "reasonably capable of instilling a legitimate expectation of a 'fair and thorough investigation in response to [] complaints." *Id.*

In *Sobek* and *Hock*, which both addressed the "Associate Handbook" and "Human Resources Policy" of St. Mary's Medical Center, the courts found that neither the handbook, which included an express disclaimer, nor the written policy, created a promise of just-cause employment under the legitimate-expectations analysis. *Sobek*, No. 00-34048-NZ-1, slip op. at 6; *Hock*, No. 00-34053-NZ-3, slip op. at 10-11. Despite these findings, both courts found that St. Mary's had an obligation to follow the procedures set forth in the Human Resources Policy prior to terminating the plaintiffs' employment. *Sobek*, No. 00-34048-NZ-1, slip op. at 6; *Hock*, No. 00-34053-NZ-3, slip op. at 12. The courts emphasized that "while an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced." *Sobek*, No. 00-34048-NZ-1, slip op. at 7; *Hock*, No. 00-34053-NZ-3, slip op. at 12 (both citing *Toussaint*, 292 N.W.2d at 892). The courts found that St. Mary's, "in its decision to draft and implement the Human Resources Policy - announced to its employees its intention to grant them certain 'rights' prior to termination, provided that the circumstances surrounding their termination triggered the policy." *Sobek*, No. 00-34048-NZ-1, slip op. at 7; *Hock*, No. 00-34053-NZ-3, slip op. at 12. Thus, St. Mary's "partially limited its authority to terminate [the plaintiffs'] otherwise at-will employment." *Sobek*, No. 00-34048-NZ-1, slip op. at 7; *Hock*, No. 00-34053-NZ-3, slip op. at 12. Notably, the courts stated that St. Mary's

had failed to present any evidence to suggest that its adherence to the Human Resources Policy was discretionary. *Sobek*, No. 00-34048-NZ-1, slip op. at 7; *Hock*, No. 00-34053-NZ-3, slip op. at 13.

Defendant contends that the cases relied upon by Plaintiff should not persuade the Court in this case. With respect to *Carson*, Defendant emphasizes that the case did not involve an employee manual with an express disclaimer. Rather, the *Carson* court enforced the employer's oral promise to conduct a "fair and thorough investigation" of complaints against employees. Indeed, the factual allegations in *Carson* are significantly different from those in this case such that *Carson* is not persuasive. Similarly, the *In re Certified Question* court did not address an employee manual with an express disclaimer.

With respect to *Sobek* and *Hock*, Defendant emphasizes that they are circuit court decisions and cites three court of appeals cases in which the court found that the St. Mary's associate handbook did not create enforceable rights because it contained an express disclaimer stating that it did not create an employment contract. *See David v. St. Mary's Med. Ctr.*, No. 231007, 2002 WL 1897945, at *2 (Mich. Ct. App. Aug. 16, 2002); *Lier v. St. Mary's Med. Ctr.*, No. 259596, 2006 WL 2708590, at *4 (Mich. Ct. App. Sept. 21, 2006); *Linzy v. St. Mary's Med. Ctr.*, No. 228627, 2002 WL 1275549, at *3 (Mich. Ct. App. June 4, 2002). Notably, these three cases are not inconsistent with *Sobek* and *Hock* because they did not consider the Human Resources Policy present in *Sobek* and *Hock*, which is where those two courts found the employer created enforceable rights.

Nevertheless, the plaintiffs' claims in *Sobek* and *Hock* are distinguishable from Plaintiff's claims in this case. Plaintiff's complaint alleges that Defendant's employee manual is the source of the policies that Defendant has allegedly breached. At issue is the Defendant's "open door policy," which Plaintiff appears to allege obligated Defendant to treat him in a fair, courteous, and

respectful manner. The open door policy appears to generally advocate "an atmosphere of concern," a "caring attitude," and charges supervisors and mangers with listening and responsibly replying to employee concerns. Also at issue is the "professional work conduct and discipline" policy, which Plaintiff appears to allege obligated Defendant to mete out discipline, including termination, in a particular manner.

Significantly, a general disclaimer is included at the front of the manual, which states, inter alia, "I understand and agree that neither this Employee Manual nor any other written or oral statements by the Company or its representatives are a contract of employment, either by intent or implication." The disclaimer further provides that "employment with the Company is terminable at the will of either me or the Company at any time, without notice or any specific disciplinary procedures." In further regard to discipline, the manual states in the "professional work conduct and discipline" section, that "[c]orrective or disciplinary steps need not be taken in a particular order nor do any progressive steps need to occur prior to termination." The section further provides, "In some situations, the company, in its sole judgment, may decide that these general guidelines are inappropriate and proceed directly to termination."

Unlike *Sobek* and *Hock*, in which the plaintiffs relied on the associate handbook and the official Human Resources Policy, here, Plaintiff has not alleged a source of policy that could bind Defendant other than the employee manual. In this way, Plaintiff's allegations suggest that the analysis of *David*, *Lier*, and *Linzy*, is more applicable than the analysis of *Sobek* and *Hock*, because in the former cases, the courts addressed an employee handbook with a disclaimer as the sole source of an allegedly enforceable policy.

Perhaps an even more important difference from *Sobek* and *Hock* is that here, Defendant's manual states that its policies are discretionary. The general disclaimer included at the front of the employee manual, which addresses both the manual as a whole and the guidelines for discipline, and the specific disclaimer in the discipline section, indicate that Defendant has not modified Plaintiff's at-will employment status, and has maintained discretion to discipline employees using "flexibility and individual judgment." *See also Martinez v. Gen. Motors Corp.*, Nos. 266112, 267218, 2007 WL 1429632, at *6 (Mich. Ct. App. May 15, 2007) (finding that the defendant's "open door policy" contained in the employee handbook did not provide the plaintiff with an enforceable right to be treated "fairly" and "honestly" and that the at-will employee did not have a "legitimate expectation that he would not be terminated without some degree of due-process-like protection"); *Muse v. Lansing Hous. Comm'n*, No. 241807, 2004 WL 60299, at *1 (Mich. Ct. App. Jan. 13, 2004) (finding that the defendant's handbook and "work rules" did not create any enforceable rights when the rules did not state that "a disciplinary progression is mandatory for every offense" and emphasizing that "[m]erely creating guidelines for a systematic way of dealing with employees' misconduct does not establish just-cause employment rather than at-will employment"); *Tabor v. Elec. Data Sys., Inc.*, No. 03-70243, 2005 WL 1030418, at *8, *8 n.3 (E.D. Mich. Apr. 27, 2005) (noting that "*Toussaint* has been limited to just cause employment contracts" and that other types of policies are not enforceable under Michigan law).

While the cases cited by both parties may not entirely preclude the possibility that a cause of action exists for a breach of a policy or procedure other than a policy establishing just-cause employment, the cases do not suggest that such a cause of action exists in a situation where the facts alleged by Plaintiff are true. In this case, Defendant expressly stated in the employee manual that

its written policies included in the manual do not create a contract and the policies explicitly reserved discretion to Defendant in applying the policies. Thus, the Court will grant Defendant's motion to dismiss Plaintiff's breach of policies and procedures claim. Additionally, Plaintiff has not indicated that any other facts exist that would demonstrate that amendment of the complaint would not be futile. Thus, the Court will not grant Plaintiff leave to amend the complaint with respect to his breach of employment policies and procedures claim.

IV

Accordingly, it is **ORDERED** that Defendant's motion to dismiss [Dkt. # 8] is **GRANTED**.

It is further **ORDERED** that Plaintiff is **GRANTED LEAVE** to file an amended complaint, which shall amend his age discrimination claim under the ELCRA such that it alleges facts sufficient under *Twombly*. Plaintiff shall file the amended complaint on or before **March 25, 2009**, or suffer dismissal of his claim with prejudice.

It is further **ORDERED** that Plaintiff's claim for breach of employment policies or procedures is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Defendant's motion to stay discovery [Dkt. # 14] is **DENIED AS MOOT**.

                                                     s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

Dated: March 13, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 13, 2009.

                               s/Tracy A. Jacobs
                               TRACY A. JACOBS